Good morning. I'm Lawrence Padway, appearing for Allgin Cox, and may it please the court. On the first round in the district court, the judge found three areas in which the plan had abused its discretion. The first was that the plan failed to treat the Social Security Disability Award in the fashion required by Montour v. Hartford. And that's not an issue of plan interpretation, which should be remanded. That's simply they didn't do their job, they broke the rules, and that does not deserve a remand. That remand just self-reported symptoms. And on that issue, the district court also should not have remanded because the California Settlement Agreement between UDEM and the California Department of Insurance provides that the self-reported symptom clause would not be used. Now, the trial court found that the Department of Insurance did not have jurisdiction over the policy, but that's incorrect. Under the McCarran-Ferguson Act, insurance is regulated state by state. And if you look at the California Settlement Agreement on the first page of it, it recites that UDEM and the other respondents are licensees and under the jurisdiction of the Department of Insurance. The Department of Insurance does approve and has to approve group disability policies before any Californian is insured. And in fact... Can I ask a question, counsel? I mean, one of the questions here is whether the 2005 California Settlement Agreement applies. And part of that, I think, hinges on whether this is a California contract. The contract itself says it's governed by Pennsylvania law. Can it be a California contract for purposes of the 2005 Settlement Agreement, but still governed by Pennsylvania law? Or does that Pennsylvania choice of law requirement control here? Well, no. The choice of law requirement deals with how the contract is interpreted between the parties. I can't make an agreement with you to sell you insurance if it's not in California, if it hasn't been approved by the California Insurance Commissioner. Now, the California Insurance Commissioner can't allow Pennsylvania choice of law. But I mean, if you look in the denial letter from UDEM, it says if you want to have your claim reviewed by the California Department of Insurance, here's the address. So plainly, the California Department of Insurance has jurisdiction. Counsel, was this plan approved by the California Insurance Commissioner? The record does not say whether it was or not. The requirement is that it must be filed within, I believe it's 30 days of it being used in California. And it's up to the insurance commissioner to approve it or disapprove it. And if the insurance commissioner fails to act or acts inappropriately, then the cases say that you can bring a petition for a mandate and we have that citation in our reply brief. So if the California Insurance Commissioner had approved this, would that provision of the CSA forbidding UDEM from using the self-reported symptoms clause, would that be approved then, if the California approved this? I mean, would that bind the parties here and stop California from objecting to the enforcement of that clause? I'm sorry, I'm not. So you've told me that you don't know whether California, the record doesn't reveal whether California approved this. If we knew that California had approved this in whatever ways, affirmatively or negatively, California ignored this, whatever it came into being, is that provision still enforceable? And why wouldn't it be if California approved it? It would not be enforceable because under the agreement, it specifically states that, let me find it here, well, it has a section on claims handling. There's a section five of the agreement has stipulations regarding changes to policy language and claims handling. And that says that policy language regarding limitation of benefits for self-reported conditions as set forth in section four C shall not be applied. And that goes on after and then it has the dates and stuff. So it specifically says if the language is in the policy, it's not to be applied. If it has been approved, what does it mean to have jurisdiction by the California Department of Insurance? Because I mean, there's two things. One would be just approving it before the contract goes out. But do they actually adjudicate claims? I mean, is there jurisdiction in that sense where claims between parties are adjudicated as well? They have jurisdiction. For example, if my claim is denied and I want to make a complaint, I can complain to the Department of Insurance. They will send a letter to UDEM saying, hey, we have a complaint. UDEM will respond to that and then the insurance commissioner might or might not do anything. But he would have jurisdiction to do something in certain circumstances? Yes. In fact, the way that they describe jurisdiction, and it's actually in the introduction, paragraph A, and this is in the record at ER 171, says the insurance commissioner of the state of California has jurisdiction over each of the respondents as insurers holding certificates of authority issued under the laws of the state of California. So the agreement defines jurisdiction as meaning that you're authorized to do business as an insurer in California. And then the agreement is that it will apply as long as you're subject to the jurisdiction of the commissioner and the policy has to be approved. So I think we've laid that out in, well, both our opening brief and a little bit more specifically in our reply brief. If we were to agree that this was a California contract, that the 2005 settlement agreement applied and therefore the self-reporting requirement or provision was invalid, what would happen here? Is there more to be done or would we send it back and say 24 months just doesn't apply, the 24-month limitation doesn't apply and he's entitled to, or Elgin Cox is entitled to full disability? No, I think Mr. Cox is entitled to the benefits at that point. The only reason asserted for not paying the benefits is the self-reported limitation. He was approved for benefits for the first two years. He's been approved, although the trial court disallowed the evidence, but we did submit proof that his life insurance premium has been waived by UNUM because he is disabled. And of course, you know, we still, so I think the only reason which has been asserted is the self-reported symptom limitation and so many other reasons would have been waived. And would he get recovery basically from 2011 up until today? I mean, how much recovery would he get? He'd get that full amount, another nine years basically. Yes, right. This case has been around for a while. Then the other issue is the disability plus. And on that, uh, the trial court held that the plan abused its discretion because, um, we briefed it and they didn't respond to the argument. Uh, and I don't know why that would be remanded. That just gives the plan a second bite, which they're not entitled. So if you get past all of that, um, then we have this remand, which is a rather interesting thing. The, um, I mean, it was that remand is a complete ambush. The plan got brand new reviewers, makes no reference to their earlier reviewers and their 45 page decision. And didn't allow us access to the reports on which it was relying, uh, on the remand. Um, didn't allow us to appeal the adverse determination made on the remand and the trial court wouldn't accept any of the declarations that we offered to, uh, refute the evidence, which was, um, no opinions, which the plan got on the remand. And under the Saloma case, uh, those should have been made available. And with that, I would, um, reserve the rest of my time. Thank you. Um, is it Ms. Kyle or Ms. Kyle DeBattista? Ms. Kyle is fine. All right, perfect. You, uh, you may proceed and, and yeah, just recognize you have nine minutes. If it pleases the court, um, the district court here gave great deference to the appellate to ensure that his claim had been fully analyzed and considered by, you know, why it did so by, uh, remanding it and making sure that, um, you know, considered all of the information available, specifically the social security administration file and the underlying evidence. And ultimately the court got it right. It found that, um, first that the claim should be reviewed under the abuse of discretion standard. It found that the self reported limitation applied. Um, and on remand, it found that, uh, you know, did not abuse its discretion in, um, finding that these claimed impairments were um, the district court also ruled that, um, you know, life didn't, uh, didn't, um, err in its consideration of the social security file on remand. Um, I would, um, I don't know about my colleagues. I would very much like to hear about the California settlement agreement issue. Absolutely. Um, our position on the California settlement agreement is that it does not apply because this is Pennsylvania contract. Um, and that the parties can contract around that simply by designating simply because they have a choice of law provision in there. Well, the, the, the settlement agreement is just for here, for the state of California. This is a, um, Allen corporation is a Pennsylvania corporation. It has three subsidiaries that it insured. I thought, I thought this, I thought this subsidiary, I understand that the parent corporation is Pennsylvania, but I thought this was a specific contract between a California subsidiary and Cox who's a California resident. Is that not correct? No, it is not. It's a, it is a group policy that was issued to Allen corporation, Pittsburgh, Pennsylvania corporation that has three subsidiaries. One is in California. One is in Miami, Florida, and one is in Pennsylvania. It insures participants from all three of those subsidiaries. And when it was issued, it was issued and delivered in Pennsylvania governed by the jurisdiction in Pennsylvania. Well, wait, what do you mean? Oh, that the policy was issued and delivered in Pennsylvania. But what, but what about when a California employee signs it, then doesn't it be, I mean, why wouldn't that make it a California contract? I mean, cause I thought it specifically said, I guess I need to go back and look where, where's the contract, uh, in the record. Do you know where that is? Cause I thought it was specifically signed by, uh, the, the California subsidiary between Mr. Cox. If you look at ER 305, you'll find the opening page of the amendment 10, which is the policy that replaced the initial policy. Um, you'll see that it is issued to Allen corporation. ER, I'm sorry. What was it? ER what? 305. Your honor. Okay. So, uh, council in, in that contract, I noted a number of places, um, three 13, uh, it lists the divisions are subsidiary. So it, it, it lists Allen consulting of California as a subsidiary, um, on page three 19, um, under the heading, what are your monthly earnings? There is a special paragraph for salaried employees, excluding employees of Allen consulting of California. And then a paragraph that covers Allen consulting of California, uh, on page three 27, uh, disability plus writer has a reference again to Allen consulting of California. And on page three 64, there is a special, uh, provision for California's slightest, uh, claims. And we have references to the self-reported symptom limitation in California. So, and, and then you've got to down at the bottom of three 64, we have a reference to based on input from the California DOI. So you have references in the contract to the department of insurance, uh, and a, and a recognition that there were different rules that applied to Allen consulting of California than applied to the other, to the other. So why doesn't that make the settlement agreement applicable to this contract? Because the terms of the contract specifically state it's governed by Pennsylvania. It specifically states that it was issued there, that that's where it was approved by the department of insurance. I don't have any indication that this was a policy that was submitted and approved by California. It's simply just not a California slightest contract. Um, we have, there are, why do you reference, explain the reference to the California department of insurance in the contract? I'm sorry, I thought there was a reference to the contract. What, what's the basis for that? Why would, can you give me the site? I missed that ER three 64 ER three 64. Yes. DOI is referred to in the next to the last paragraph. I don't have ER three 64 as being the part of the contract. This is part of it's up at the top. It's a little difficult for me to read, but it says the benefit center claims manual. Is that something different? Yes. That's the claims manual that, um, is it's not part of, it's not the policy. Well, what is it? What do you mean? It's not the policy. It's a claims manual. Isn't it cover how you file claims pursuant to the agreement? Uh, the claims manual is the you know, but, but isn't that an acknowledgement that it's, that it, that it is bound in some way by California law since it's referred to based on input from the California DOI. Indeed, when it is considering California cited contracts, these are the provisions that are used. Well, hold on. You just told us you don't have any California cited contracts. No, of course, you know, what has contracts that have been issued in California, this Allen corporation contract is not one of them. Wait. So who's, so the benefits center claims manual is, is, is whose manual and what does it apply to? It is, you know, life's manual that governs it's a adjudication of all claims, all group long-term disability claims that come in this particular section applies. And it says in the heading, California mental nervous and that this did not apply to his relationship with Allen. Oh, well, Mr. Mr. Cox is charged with having read his policy. It informs him it's governed by Pennsylvania. It informs him that it is not cited in California. And these provisions apply specifically in its state. So on the terms of that page to California cited disability claims filed between certain time periods. What does California cited disability claims? That doesn't mean that the, that the claim itself relates to California because you're employed in California that refers to con that refers to the choice of law provision. Uh, it meant it, the definition of California claims is provided on a different page and let me see if I can find that site for you. Um, but a California cited contract is a contract that's issued in California. Let me see if I can find that. Uh, it looks like there may be a link on page 367 under other that shows that definition. And what does the definition say? I don't have it in front of me. Let me see if I can find it. I apologize. So the, there's, there's a reference on 364 and on 367 that looks like there's probably a link to something called definition of California claims. Yes, your honor. That, that is what I'm looking for. Um, and I'm not finding the citation. That's why I'm struggling. I'm not going to be able to help you on that. Let me see if I can. What, um, uh, maybe, maybe it makes sense to move on, um, here from the other guy. Well, unless there's other questions, we could come back to you at the end. If you're able to find, I would continue to look while the, while a council takes. Okay. Yeah. All right. Thanks council. Um, I don't, let's see, who do we have next? We've got, uh, um, Mr. Altura on behalf of, uh, Aetna, right? Good morning. Uh, thank you, your honor. Uh, Jordan Altura on behalf of Aetna may please the court. Uh, the judgment as to Aetna must be for the simple reason that Mr. Cox never worked for Dell. His claim was covered under the Allen plan. He received benefits under the Allen plan. Uh, and appellant, appellant concedes there are no material facts in dispute. Uh, indeed, uh, appellant concedes that the district court got it right. The court interpreted the terms of the, uh, Dell plan properly in finding that Mr. Cox never became eligible for benefits under the Aetna plan because he was eligible for benefits under the Allen plan. And in fact, did receive those benefits. Uh, instead of taking issue with the district court's ruling, appellant creates this argument from whole cloth that this court's decision as to UNUM somehow has an impact on the courts, on the district court's decision as to Aetna. And that is entirely incorrect. There is no basis for that assertion. There's no facts in the record or legal authority to support that conclusion. Nothing this court decides with respect to UNUM or the merits of UNUM's decision has any impact whatsoever on the policy terms, the policy issued by Aetna to Dell. It won't change the fact that Mr. Cox never worked for Dell and that he received benefits under the Allen plan. The merits of that decision by UNUM are irrelevant to the eligibility question. Can I, um, I, I, I appreciate your argument on this and, and, uh, uh, I just wondered if you haven't, can you weigh in at all on this California contract question? I assume Aetna also issued policies, uh, you know, that may be to a, whether it's Pennsylvania corporation or Texas corporation that have, uh, employees in California and subsidiaries in California. What, what did we, what's your normal process at Aetna for determining whether it's subject to this 2005 California settlement agreement? Your honor, that's an interesting question. And I was thinking about, uh, those issues myself, and I, I apologize that I'm not familiar with the record for UNUM. Um, and so I, well, but it does, but Aetna, you must have the same situation, don't you? Your honor, as, uh, I have represented Aetna for many years and we do have policies that are governed by other States laws. So for example, I can give you a great example of a situation where, um, there's a, there's an insurance code regulation. I think it's 10-8808. It's, and I may be wrong on the citation, but that code section years ago eliminated discretionary clauses from policies issued in California. In other words, it removed an administrator's discretion. I'm sure the court's familiar with those terms, but if a policy is issued in another state, uh, even if the claim arises in California, it doesn't necessarily mean that, um, that the plan loses its discretion. Um, so I'm not sure if that analogy is particularly appropriate. It's a data point. No, I, I didn't mean to put you on the spot, but I just was wondering if you could, I appreciate that. That's helpful. Not at all, your honor. Um, and I have taken you over time. Are there any other questions? Uh, if not, I think we have your argument. Thank you, your honor. Thank you. And, uh, Mr. Scherz, is it Scherz? Scherz, yes, your honor. Thank you. Carl Scherz on behalf of the Dell entities, may it please the court. Uh, the Dell entities were where we're conditionally named if there's no coverage under UNUM, uh, and if there's no coverage under Aetna, uh, but the dismissal of the Dell entities should be affirmed. There was no legal basis for the claims against these entities. And all it does is just expand, um, the litigation costs to the plan. Uh, first and foremost, most importantly, is that before Dell even acquired the Allen Corporation, um, is when this long-term disability claim occurred. Uh, this long-term disability claim was triggered while Mr. Cox was employed by Allen Corporation before Dell acquired it. Um, and so that's when the occurrence was, that's when it starts. And it was covered thus under the Allen plan and under the UNUM insurance policy. And as the record shows, that's why Mr. Cox made a claim under the UNUM policy. It was in fact covered. This is really just a dispute over the extent of benefits under that because he's merely seeking duplicative coverage, which he's not entitled to. You know, I would analogize this to if Mr. Cox had gone into, uh, the emergency room, uh, in November of 2008 and had a broken arm and that claim would be under his health coverage. Um, if, while he was an employee of, under Allen, you wouldn't expect that ER visit before Dell, uh, was the employer, uh, or Dell's plan to provide coverage. That would be duplicative. Secondly, um, there's no reason to join the Dell entities for the, for the facts that Dell plan makes clear that the exclusive, uh, obligation to administer these claims was, was, uh, delegated to Aetna. The plan also makes clear that the obligation to pay any claims is exclusively and solely, um, owed by the insurer, Aetna, not Dell. And that should be honored by the court and the district court found that and, and, um, that should be affirmed. That dismissal is consistent with what the Ninth Circuit found in the Sear opinion, where it talks about the logical defendant is the entity, uh, that is, uh, responsible for payment or for administration. And, and that's what the Milton versus Life Insurance Company case that we found and, and also dismissed because in that case, um, the, the, uh, the, uh, plan and plan administrator was not responsible for payment or for the administration of the claim. Um, and beyond that issue on the breach of contract for benefits, um, then also there's no basis as we under the purchase agreement because the purchase agreement as cited by Cox makes clear, he's not entitled to duplicative coverage. And then also there was no discrimination here. We took no action either by virtue of the plan or through his employment, uh, to change his coverage. Mr. Cox was covered under the Inum plan. Counsel, you're, you're, you're over time now or more than a minute. I think, I think we have your argument. All right. Thank you. Thank you very much. Thank you. Um, Mr. Padway, if you want to, uh, give your rebuttal. I think you might be on mute, sir. Counsel. Thank you. I'm sorry. Uh, so, uh, we are not seeking duplicate payment under the agreement by which, um, Dell acquired Allen. Uh, my client is guaranteed the same benefits that he would have, um, um, with other Cox, I'm sorry, with other Dell employees. Um, so it is a kind of a conditional argument because if the self-reported symptom limitation does not apply to the Inum coverage, then I would agree. We have no case against, uh, Dell or Aetna. And, uh, you know, for some reason, the self-reported symptom limitation is upheld. Um, then, uh, we cited Lessard versus Applied Risk Management. Um, and I don't think we really need to argue that issue any further. Can I ask you, can you point us to anything in the record? We, we've walked through a few things, but is there any other evidence that you're aware of in the settlement agreement? As opposed to, because, go ahead. Um, the denial letter. The denial letter. Right. For example, the one that, uh, uh, page 225 of the excerpts, um, on the last page of that letter, which is, uh, page 225. Uh, it says, you may also contact the California Department, the California Insurance Department, if you wish to have them review your claim. And then it has the address. So, Inum is well aware that this claim is regulated by California. It doesn't say right to the Pennsylvania Department of Insurance. Um, and I think we've got this set out pretty well in our reply brief, starting on page eight or nine. But, uh, I mean, the insurance code in California, um, it's really pretty straightforward. Um, Counsel, do you have anything, do you have, can you answer the question that we asked, uh, Ms. Kyle about the definition of a California, California contract? Well, that, uh, definition is in the Unum claims manual. And I think it really ends up just being confusing. Well, it may be confusing, but right now we don't know what it says. So could you tell us what, do you know, can you tell us what it says? Um, I may, I may still be confused after I see what it says, but I really like to know what it is before I decide whether I'm confused. You know, I was looking at it, um, a little earlier today, but there's, you know, you have to, they talk about the situs of the claim. Um, and in the brief, they talk about the status of the policy. Um, I can't pull that page out quickly. Um, I could certainly send in a note, which would, which would have, have that reference, but I think, uh, the settlement agreement, um, the California settlement agreement is, is in the record, starting at ER 171. Um, it recites that, uh, is what is under the jurisdiction of the insurance commissioner of the state of California is issuing all kinds of policies and they may be issuing them to California corporations for which there's no dispute that California law applies. The question here is what happens when it issues something that covers multiple subsidiaries of a Pennsylvania corporation, including a subsidiary based in California? If they insure anyone in California, they have to file that policy with the California department of insurance. Um, and that's California insurance code one, two, nine. Okay. And if that's, if, if they, they should have done that in this case, then we should have some evidence in the record that they sought approval from California DOI. I understood you to tell us your opening argument that you weren't aware of whether they submitted it or not. Right. I mean, I presume they did. It's just a, you know, it's just a filing. If you file it and, uh, then if the, the department of insurance does whatever they do, but, uh, I mean, it'd be unlawful for them to be doing business without notifying the department. Um, you know, it's like, you have to get a business license, um, to do business, but it's, uh, uh, it's clearly required that it be filed. Nobody's disputed that. Um, and the department, um, presumably, I presume they approved it because otherwise, you know, there'd be an order, um, disapproving it. Okay. Mr. Padway, thank you, uh, for your time. Um, Ms. Kyle, we'll come back to you now for anything you could reference us to for that definition. I did, your honor. Um, if you look at our brief on page 37 of the, um, answering brief on behalf of Allen Corporation and Unum, um, down at the bottom, it discusses the Unum claims manual contains the following definition of California claims, um, non reassessed claims. Now the CSA, um, dealt with reassessing prior claims and moving forward on new claims. So when we deal with the non reassessed claims, that would be the claims moving forward, not the ones they would be reassessing. And it states that effective 10, three Oh five California claims are defined as those claims filed on or after six 24 Oh four that arrived out of group STD and LTD California citus policies. Okay. That feels pretty circular. Well, yeah, I don't know if we've gotten an answer to what's a California citus policy. So I can tell you that the term citus has been used, um, in policy language and in as identifying the, uh, location of the governing jurisdiction. Um, the, this particular policy is referred to as a Pennsylvania citus policy. Um, that that's been a pattern in practice. Okay. Uh, thank you, council. Thank you everyone for helping us clarify some difficult issues in this case. And, uh, the case is now submitted.
judges: Bybee, Whaley, Nelson